# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL A. MENDEZ,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | Civ. No.: 06-6106<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Plaintiff Michael A. Mendez's ("Plaintiff") appeal of a decision by Defendant Michael J. Astrue ("Defendant"), the former commissioner of the Social Security Administration ("SSA"). Plaintiff seeks remand and reversal of an SSA determination that he was not disabled between January 26, 2002 and October 7, 2003. Pl. Br., ECF No. 10 ("Brief"). For the reasons set forth below, the appeal is **DENIED**.

## I. BACKGROUND

Plaintiff alleges that since January 26, 2002, he has been totally disabled and unable to work due to mental and physical impairments. Brief at 3. Plaintiff originally filed for disability insurance benefits and supplemental security income in May and June of 2002. Admin. Record at 18, 47-52, ECF No. 18 ("AR"). His application was denied initially and on reconsideration. AR at 47-58. Plaintiff then requested a hearing, which took place in June 2004 before Administrative Law Judge Katherine Edgell ("ALJ"). AR at 32. The ALJ determined Plaintiff was disabled as of October 7, 2003, but not before that date. AR at 112. Plaintiff appealed, and the SSA's Appeals Counsel issued a Notice of Affirmation and Order remanding the case to the ALJ for further consideration. AR at 43-46, 84. Pursuant to the Appeals Counsel's order, the ALJ held another hearing on April 18, 2006. AR at 18. Once again, she issued a decision ("Decision") finding Plaintiff not disabled prior to October 2003. AR at 24. Plaintiff appealed again, but this time the Appeals Counsel denied his request for review, making the ALJ's Decision the final, appealable order. AR at 8-11.

Plaintiff filed suit in this Court on December 19, 2006. ECF No. 1. The case was assigned to a now-retired district judge. By consent, the Court remanded the matter to the SSA to locate Plaintiff's claim file. ECF No. 7. Defendant submitted the record in December 2008. In 2009, the parties submitted briefing. *See* Pl. Br.; Def. Opp., ECF No. 12, Pl. Reply, ECF No. 14. Other than a notice of appearance on behalf of Defendant, the case sat dormant until 2019. On June 18, 2019, Chief Judge Freda L. Wolfson reassigned the case to the undersigned. As the claim

file could not be located, the matter was once again remanded to the SSA to provide a complete record. ECF No. 17. Defendant did so on August 2. ECF No. 18.[1]

## II. THE FIVE-STEP SEQUENTIAL ANALYSIS

The Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. *Id.* Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. *Id.* §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## III. DISCUSSION

The overarching issue in this matter is whether the ALJ properly determined Plaintiff was not disabled between January 26, 2002, and October 6, 2003. The Court has plenary review over the ALJ's determination of legal issues. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (cleaned up). The standard of review for findings of fact, on the other hand, is deferential. The standard "is whether there is substantial evidence to support such findings." 42 U.S.C. §§ 405(g) & 1383(c). Courts are not permitted to re-weigh the evidence or impose their own factual determinations. *Chandler*, 667 F.3d at 359 (cleaned up). Instead, "substantial evidence" only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

### A. <u>Evidence of a Non-Severe Mental Impairment Prior to October 7, 2003</u>

At Step Two, the ALJ found that "medical evidence establishe[d] the existence of [severe] pulmonary and bilateral knee impairments." AR at 21. "It d[id] not, however, establish the existence of any other severe impairment." *Id.* Plaintiff argues that conclusion is incorrect because significant evidence demonstrated a "severe" mental illness. Brief at 5-7.

As noted above, at Step Two of the five-step sequential analysis, the SSA determines if the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R.

---

[1] The Court regrets the lengthy delay in resolving this matter and sought to act with all deliberate speed once the matter was reassigned to the Undersigned.

§§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two. *Id.* "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* (cleaned up).

Here, in finding no severe mental impairment prior to October 2003, the ALJ relied primarily on an assessment by Plaintiff's treating physician, Dr. C. Dicovskiy. In April 2003, Dr. Dicovskiy assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 70, which indicates "no more than mild symptoms and limitations." AR at 22.[2] The ALJ also found significant the fact that Plaintiff did not allege any form of mental disorder when initially applying for benefits. AR at 21. While there was some pre-application history of mental impairment, Plaintiff subsequently performed substantial gainful activity until at least 2002. *Id.* Thus, mental impairments could not have prevented him from working during that time. *Id.* Further, "there [was] no indications in the record that mental factors were a consideration in [Plaintiff's] stopping work," or that he sought or obtained mental treatment through February 2003. *Id.* at 21-22. And during Plaintiff's application process, he specifically told SSA staff that he was not being, nor was he seeking, treatment for depressive symptoms. *Id.* at 22.

Plaintiff points to some contemporaneous evidence of mental impairment and attempts to explain the impairments' lack of inclusion in initial application papers. Br. at 5-10. While a trier of fact could weigh the evidence differently, the Court is bound by the ALJ's factual determinations so long as there is substantial evidence for them. 42 U.S.C. §§ 405(g) & 1383(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004) ("The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole."). As the ALJ found significant, Dr. Dicovskiy's assignment of a 70 GAF score strongly supports the conclusion that Plaintiff's mental impairments did not limit his ability to do basic work activities before October 2003. AR 21-22; *Newell*, 347 F.3d at 546 (providing examples of basic work activities). Other evidence corroborates that determination, including gainful employment until 2002, lack of assertions of mental illness in original benefit applications, and lack of treatment or care. *See* AR at 21-22. While that additional evidence may be insufficient to find non-severity on its own, it does help corroborate Plaintiff's treating physician's assessment. *Cf. Newell*, 347 F.3d at 547 (describing impropriety of relying on lack of evidence "in the particular circumstances of this case").

For these reasons, the Court finds that substantial evidence supports the ALJ's determination regarding the severity of Plaintiff's mental impairment. Accordingly, the Court **DENIES** Plaintiff's appeal of the ALJ's decision at Step Two. *See Newell*, 347 F.3d at 546

---

[2] Plaintiff's brief acknowledges (1) a GAF score reports "the clinician's judgment of the individual's overall level of functioning and carrying out activities of daily living," (2) that "[t]his information is useful in planning treatment and measuring its impact, and in predicting outcome," and (3) that a GAF score between 61-70 indicates "generally functioning pretty well." Pl. Br. at 6-7 n.3.

3

(holding non-severe impairments are those that "have no more than a minimal effect on an individual's ability to work"); AR at 22 (relying on treating physician's assessment indicating Plaintiff had "only mild symptoms and limitations").

### B. Credibility Determinations

Plaintiff argues the ALJ inappropriately found his and his fiancé's testimony noncredible.

> [A]n ALJ has the authority and responsibility to analyze all of the evidence in the record and provide adequate explanations for disregarding or rejecting evidence. An ALJ cannot just bypass evidence contrary to his or her decision. Where the ALJ concludes that testimony is not credible, the ALJ must indicate the basis for that conclusion in his decision. Subjective complaints merit serious consideration, even when not fully confirmed by objective medical evidence. The ALJ is not required, however, to accept without question the subjective complaints of a claimant.

*Ford v. Comm'r of Soc. Sec.*, No. 12-cv-3857, 2014 WL 1310174, at *9 (D.N.J. Mar. 31, 2014), *aff'd*, 611 F. App'x 102 (3d Cir. 2015).

#### 1. *Plaintiff's Testimony*

With respect to Plaintiff's own testimony, he complains "the ALJ did not explain her reasons for finding his statements '[] not credible to the degree of incapacitation alleged.'" Mot. at 22 (quoting AR at 23). But the ALJ specifically listed the medical evidence contrary to Plaintiff's subjective complaints of pain. *See* AR at 23-24. Plaintiff further argues it was "an error of law for the ALJ to reject subjective statements based on objective evidence alone." Mot. at 22. In support, Plaintiff cites SSA regulations stating: "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." Mot. at 22 (cleaned up). But here, the ALJ rejected Plaintiff's statements because objective medical evidence *contradicted* them, not for lack of *substantiating* evidence. *See* AR at 23-24. Further, Plaintiff testified that he climbed two flights of stairs to reach his apartment and took his dog for daily walks. Thus, Plaintiff's own testimony supports the ALJ's determination that—contrary to some of Plaintiff's other testimony—his pain was not debilitating.

#### 2. *Plaintiff's Fiancé's Testimony*

As to Plaintiff's fiancé, the Decision states that the ALJ "considered the testimony of the claimant's [fiancé] who asserted that the claimant was physically abusive during the period at issue by pushing her all day everyday." AR at 22. However, because "she never called police or emergency mental health workers or otherwise sought assistance," the ALJ found "her uncorroborated account not credible." *Id.*

Plaintiff does not provide an adequate basis to upset the ALJ's credibility determination. With the benefit of live observation, the ALJ found Plaintiff's fiancé's testimony non-credible. As the ALJ noted, that conclusion was buttressed by the lack of corroborating evidence. Therefore, the ALJ met her obligation to "indicate the basis for [her] conclusion" regarding credibility. *Ford*, 2014 WL 1310174, at *9.

4

C.  **Medical Expert for Onset Date**

Plaintiff argues the ALJ erred as a matter of law by not consulting a medical expert to determine the onset date of Plaintiff's disability. Mot. at 10-14. Under the SSA's rules at the time of the ALJ decision, "[a]t the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." SSR 83–20.[3] Examples of when an onset date must be inferred include when "the alleged onset and the date last worked are far in the past and adequate medical records are not available." *Id.*

Here, the alleged onset date and date last worked (January 2002) were relatively close to Plaintiff's first hearing before the ALJ (June 2004). AR at 32. Further, Plaintiff submitted voluminous medical records from which the ALJ could determine the onset date. *See* SSR 83–20. Finally, SSR 83–20 mandates that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death." *Id.* As discussed above, given Plaintiff's work history and the medical evidence, the ALJ reasonably concluded Plaintiff's mental impairments were not severe enough to significantly impact his ability to work prior to October 2003. *See supra* Part III.A.

D.  **Rejection of Dr. Al-Shrouf's Opinion**

Plaintiff argues the ALJ erred in ignoring Dr. Al-Shrouf's opinion that Plaintiff "has been unable to work since January 26, 2002." Mot. at 16-18. Defendant responds that the ALJ did not err, as the statement was not a "medical opinion" entitled to deference, but instead pertained to an issue reserved for the SSA. Opp. at 2-28.

Defendant is correct. Dr. Al-Shrouf's opinion regarding Plaintiff's ability to work is not a medical opinion entitled to deference. Instead, whether Plaintiff was able to work is an issue reserved for the SSA to determine. *See* 20 C.F.R. §§ 404.1527(e)(1)-(2) (2006) and 416.927(e)(1)-(2) (2006) (including ability to work in "issues reserved to the Commissioner"). As discussed above, the Court must affirm the ALJ's decision on the severity of Plaintiff's condition (and its impact on his ability to work) if it is supported by substantial evidence. 42 U.S.C. §§ 405(g) & 1383(c). Here, substantial evidence supports the ALJ's determination that Plaintiff's alleged mental impairments did not significantly hamper his ability to work before October 2003. *See supra* Part III.A. To the extent Plaintiff accuses the ALJ of improperly ignoring Dr. Al-Shrouf's opinion, the ALJ explicitly cited Dr. Al-Shrouf in her decision. AR at 21. Further, given the substantial evidence that Plaintiff did not suddenly lose the ability to work on January 26, 2002, any error in failing to explicitly reference Dr. Al-Shrouf's non-medical opinion was harmless. *See supra* Part III.A; *Seaman v. Soc. Sec. Admin.*, 321 F. App'x 134, 136 (3d Cir. 2009) (affirming where, assuming *arguendo* the ALJ erred, Plaintiff otherwise failed to establish a disability).

---

[3] While in other contexts, reference to current rules and regulations may be appropriate, here, the Court sits in review of the April 2006 Decision. To determine whether the ALJ erred in rendering that Decision, the Court must reference the regulations in effect at the time.

5

### E. Residual Functional Capacity Calculation

Finally, Plaintiff argues the ALJ erred in calculating his RFC because it was not supported by substantial evidence. Mot. at 18-20. More specifically, Plaintiff argues the ALJ erred in concluding that Plaintiff could engage in light work because (1) evidence from Dr. Cheema does not support that conclusion and (2) the agency consultant, Dr. Schoen, did not account for all of Plaintiff's conditions in concluding Plaintiff could perform light work.

Plaintiff's arguments are inapposite. Dr. Cheema concluded Plaintiff retained the ability to perform work involving fewer physical demands than his past work as a roofer. AR at 24. Plaintiff argues that because roofing work involved "heavy" exertion, Dr. Cheema could have meant Plaintiff was only able to perform "sedentary" or "less than sedentary" work, not "light" work. Mot. at 19. Plaintiff's logic is sound, but other substantial evidence supports the conclusion that Plaintiff was able to work beyond a sedentary level. The ALJ specifically cited a report from Dr. Hoffman that Plaintiff did not need assistive devices and had no difficulty climbing off an examination table. AR at 23. Further, Plaintiff admitted to climbing two flights of stairs to reach his apartment and multiple daily walks for exercise. *Id.* Thus, the ALJ relied on more substantial evidence than Dr. Cheema's slightly ambiguous statement in determining Plaintiff's RFA.

Plaintiff's argument regarding Dr. Schoen's failure to consider every potential impairment and piece of evidence suffers the same fate. *See* Mot. at 19-20. The Court need not decide whether Dr. Schoen's opinion constitutes substantial evidence on its own, because the ALJ also relied on other evidence the Court considers substantial. The Decision cites evidence from Dr. Hoffman, records from St. Joseph's hospital, and the results of other medical tests. *See* AR at 23. Further, considering Plaintiff's admitted ability to take multiple walks per day and climb stairs to his apartment, any deficiencies in Dr. Schoen's analysis did not cause him to report that Plaintiff could perform more strenuous work than he was capable of. Accordingly, the ALJ did not err in finding Plaintiff maintained the ability to perform light work.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's appeal of the SSA's Decision is **DENIED**. An appropriate Order follows.

Date: October __, 2019

WILLIAM J. MARTINI, U.S.D.J.